UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| **BOBBY LEE PARKS, SR.**<br>    LA. DOC #332119<br>VS. | **CIVIL ACTION NO. 6:13-cv-2748**<br><br>**SECTION P**<br><br>**JUDGE RICHARD T. HAIK, SR.** |
| **IBERIA WORK RELEASE, ET AL.** | **MAGISTRATE JUDGE PATRICK J. HANNA** |

REPORT AND RECOMMENDATION

*Pro se* plaintiff Bobby Lee Parks, Sr., proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on September 25, 2013. Plaintiff is an inmate in the custody of Louisiana's Department of Corrections (DOC). When he filed his complaint he was incarcerated at the Catahoula Correctional Center (CCC), however, he was thereafter transferred and is now incarcerated at the Assumption Parish Detention Center. He complains that he was wrongfully terminated from participating in the Iberia Work Release Program in April 2013. Plaintiff sued Iberia Work Release (IWR), the Louisiana Workforce LLC, the Iberia Transitional Work Program and Warden Frank Ellis. He prayed for reinstatement in the DOC's work release program at the City of Faith Halfway House in Monroe and for an unspecified amount of compensatory damages. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous.

*Statement of the Case*

On April 15, 2013 plaintiff was participating in the IWR Program and assigned to work at

Norris International. On that day he complained that his left leg, which had been injured over 15 years ago, began to swell because he had been standing for a period of 12 hours and had failed to take his fluid pills. His supervisor at Norris contacted IWR and advised that plaintiff needed medical care. He was thereafter transported back to the IWR facility where he met with Warden Ellis who advised that plaintiff would not be accepted at the Youngsville Clinic. He then spent the rest of the day at the facility and the following day, April 16, 2013 he was transported to the University Medical Center where he was examined by a physician who prescribed medication and cleared him for return to work.

Upon his return to the IWR facility he was advised that he was no longer eligible to participate in the IWR program. Plaintiff contested that determination and advised that he had been cleared for work by the UMC physician. Plaintiff then requested transfer to another job within the IWR program, but instead he was transferred to CCC. According to plaintiff, approximately 90 days after his transfer to CCC he was served with a Disciplinary Report which alleged that plaintiff advised Deputy Warden Roosevelt that he no longer wished to participate in the Work Release Program.

Plaintiff seeks reinstatement in Work Release at another facility and compensatory damages for wrongful termination.

*Law and Analysis*

*1. Screening*

Plaintiff is a prisoner who has been permitted to proceed *in forma pauperis.* As a prisoner seeking redress from an officer or employee of a governmental entity, plaintiff's complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott,* 156 F.3d

578, 579-80 (5th Cir.1998) (per curiam). Because he is proceeding *in forma pauperis,* his complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2) (B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

*2. Work Release – Due Process/Equal Protection*

In order to obtain injunctive relief or to hold any of the defendants liable under 42 U.S.C. §1983, the plaintiff must allege facts to show (1) that a constitutional right has been violated and (2) that the conduct complained of was committed by a person acting under color of state law, that is, that the defendant was a state actor. *See Hessbrook v. Lennon*, 777 F.2d 999, 1005 (5th Cir. 1985). Plaintiff claims that the defendants, who are all state actors, deprived him of his right to participate in the IWR and thereafter any other work release programs associated with the Department; he thus implies that in so doing, the defendants violated his right to Due Process.

Plaintiff has neither a liberty nor property interest in the work release program and therefore his due process claims are frivolous. La. R.S.15:1111, the statute establishing the work release program, provides in part, "The Department [of Corrections] shall establish rules for the

administration of the work release program and shall determine those inmates who may participate in the release program. Any convict sentenced to imprisonment at hard labor shall be eligible at any time during his sentence to participate in the work release program..."

In *Welch v. Thompson*, 20 F.3d 636 (5th Cir. 1994), the Fifth Circuit determined that La. R.S.15:1111 entrusts the actual operation of the work release program to the LDOC. The court further determined that the statute does not dictate to the LDOC who it must put on work release. In short, the Fifth Circuit has held that "...La. R.S.15:1111 does not create a liberty interest subject to the Due Process Clause." *Welch v. Thompson*, 20 F.3d 636, 644 (5th Cir. 1994). Since the statute does not create a protected liberty interest for eligible prisoners, there can be no deprivation of a liberty interest protected by the due process clause of the Constitution, and therefore plaintiff cannot show that a constitutional right has been violated.

To the extent that plaintiff also implies that he was deprived of a "property interest" as opposed to a liberty interest in violation of the due process clause, such an argument also lacks an arguable basis in law and fact. In *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), the Supreme Court concluded that in order to have a property interest in a benefit, a person must have more than a "unilateral expectation" of it. Rather, he must "have a legitimate claim of entitlement to it." *Id.* (emphasis supplied). Thus, the "property interest" protected by the due process clause of the Fourteenth Amendment is defined by the concept of "entitlement," which in turn describes "the security of interests that a person has already acquired in specific benefits." *Id.* at 576, 92 S.Ct. at 2708. In other words, a person's interest in a benefit is a property interest only "if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit..." *Evans v. City of Dallas*, 861

F.2d 846, 848 (5th Cir. 1988. Plaintiff can point to no rule or understanding which entitle him to participate in the program. In any event, the Fifth Circuit has also held that prisoners have no property interest work-release employment. *Bulger v. U.S. Bureau of Prisons*, 65 F.3d 48 (5th Cir.1995). Plaintiff is not entitled to participate in any particular work-release program and therefore to the extent that he implies that he was denied either a liberty interest or a property right in violation of the Due Process Clause, such claims are subject to dismissal as frivolous.

### 3. Prison Disciplinary Write-up

Plaintiff also implies that his due process rights were violated by the defendants when they failed to abide by the prison's rules for disciplinary proceedings. By virtue of a valid criminal conviction and subsequent legal confinement, a prisoner loses his expectation of liberty. *See Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). Nevertheless, plaintiff implies that his due process rights were violated when prison officials deprived him of the opportunity to participate in work release programs following his untimely disciplinary write-up. This allegation, taken as true for the purposes of this Report, fails to state a claim for which relief might be granted pursuant to 42 U.S.C. §1983 because "[t]he Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." *Sandin v. Conner*, 515 U.S. 472, 478, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). The federal jurisprudence holds, that while the states may under certain circumstances create rights that implicate Due Process, such rights are limited to freedom from restraints that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

In other words, when a prisoner is lawfully incarcerated, he loses many of the rights and

privileges that most citizens enjoy. *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir.1997). Thus, "... mere[ ] changes in the conditions of [ ] confinement ... do not implicate due process concerns." See *Madison*, 104 F.3d at 768; see also *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir.1999) ("Inmates have no protectable property or liberty interest in custodial classifications."). Plaintiff's claims regarding his confinement in lock down and his loss of yard and recreation privileges are not "atypical" and thus his due process complaints fail to state a claim for which relief might be granted.

*Recommendation*

Therefore

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted pursuant to the provisions of 28 U.S.C. § 1915(e)(2). Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See**, *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996);

*superceded by statute on other grounds*, **28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).**

  In Chambers, Lafayette, Louisiana November 22, 2013.

            _____
            **PATRICK J. HANNA**
            **UNITED STATES MAGISTRATE JUDGE**